```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

UNITED STATES OF AMERICA    )
                            )
    v.                      )        1:19CR183-1
                            )
DARRELL ANTHONY HERBIN, JR. )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Before the court is the motion of Defendant Darrell Anthony Herbin, Jr., to suppress evidence seized from him following law enforcement's stop of the vehicle in which he was riding on January 4, 2019. (Doc. 26.) The Government filed a response (Doc. 29), and an evidentiary hearing was held on December 4, 2019. For the reasons set forth below, the motion will be denied.

I.  **BACKGROUND**

The Government presented the testimony of Corporal Douglas Strader, a 16-year veteran of the Greensboro (North Carolina) Police Department ("GPD"), Officer Joshua Payne, a 7-year GPD veteran, Officer Wayne Morrison, a 8-year GPD veteran, and Officer Jeremy Johnson, an 11-year GPD veteran. The court finds their testimony credible and makes the following findings of fact:

On January 4, 2019, Corporal Strader was patrolling downtown Greensboro in his marked GPD vehicle around midnight. Lighting was good. While his vehicle was parked in the far-left lane of Friendly Avenue (a one-way street), facing west, a grey Chevrolet

car passed by him and pulled into the lane in front of him to turn left (south) onto Elm Street.  At that time, Corporal Strader smelled "a strong odor" of what he knew, from his training and experience from many arrests, was "burnt and unburnt marijuana." There were no other vehicles or pedestrians around at the time. Corporal Strader pulled his vehicle up behind the Chevrolet, which was waiting at the stoplight.  As the light turned green, the Chevrolet turned onto Elm Street, and as Corporal Strader drove forward to the area where the Chevrolet had been stopped and began to turn onto Elm, following the Chevrolet, he again observed the strong odor of marijuana.  Corporal Strader could not recall whether the windows of both his vehicle and the grey Chevrolet were up or down.

Suspecting that the occupants of the Chevrolet may be smoking marijuana, Corporal Strader decided to "pace" the vehicle to determine whether he could observe a traffic violation to provide probable cause to stop the vehicle.[1]  The posted speed limit is 20 miles per hour.  Corporal Strader began to follow the Chevrolet and paced it for about a one-block area, employing the process explained to him at the GPD.  He described that as following the suspect vehicle at a fixed distance while trying to match the speed

---

[1] Corporal Strader had been certified earlier in his career to operate a radar for monitoring traffic speed, but he was not certified on this occasion.

using the speedometer of his patrol vehicle. He kept what he believed was a fixed and proper distance between him and the suspect vehicle. In doing so, he paced the Chevrolet going "at least 27 miles per hour" for half of the city block and concluded that the Chevrolet was exceeding the posted speed limit. Believing he had probable cause to make a traffic stop, based on his observance of the odor of marijuana and a traffic violation, he activated his blue lights. Eventually, the Chevrolet pulled over.

Corporal Strader approached the driver's side of the Chevrolet and, upon reaching the vehicle, again noticed the strong odor of burned marijuana. When Corporal Strader asked the driver to step out, Defendant Herbin, who was the front seat passenger of the Chevrolet, began to "fumble around" inside the car and reached for the door handle. Corporal Strader instructed Herbin several times to stay in the car. However, Herbin opened his car door and began to flee on foot. By now several GPD officers had arrived at the scene.

Officer Payne, one of the arriving officers, also detected a strong odor of marijuana as he approached the Chevrolet. He heard Corporal Strader direct Herbin to stop, but Herbin began running. As Herbin did so, Officer Payne heard and saw a metal object hit the sidewalk, which he determined quickly was a handgun. He yelled "1032," the police code for gun. Officer Morrison pursued Herbin to a nearby parking deck, where Officer Johnson had apprehended

3

and detained Herbin. Herbin was placed in the back of a GPD patrol car, taken to the jail, and processed. Officers found cocaine in his right front pocket as well as in his underwear. A subsequent search of the patrol car where Herbin had been sitting revealed a tennis ball-sized bag of marijuana stuffed in-between the seat. According to Officer Morrison, the officers had not transported any other prisoners that night and thus no one other than Herbin had sat there.

Herbin was charged in a four count indictment with the following: (1) possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D); (2) possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (4) possession of a firearm by a convicted felon, in violation of U.S.C. §§ 922(g)(1) and 924(a)(2).

## II. ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable." Wilson v. Arkansas, 514 U.S. 927, 931 (1995) (quoting New Jersey v. T.L.O., 469 U.S. 325, 337 (1985)). "Because an automobile stop is a seizure of a person,

the stop must comply with the Fourth Amendment's requirement 'that it not be "unreasonable" under the circumstances.'" United States v. Wilson, 205 F.3d 720, 722-23 (4th Cir. 2000) (en banc) (quoting Whren v. United States, 517 U.S. 806, 809-10, (1996)). "As a result, such a stop 'must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct.'" Id. at 723 (quoting United States v. Hassan El, 5 F.3d 726, 729 (4th Cir. 1993)). "When an officer observes a traffic offense —- however minor -— he has probable cause to stop the driver of the vehicle." Hassan El, 5 F.3d at 730 (quoting United States v. Cummins, 920 F.2d 498, 500 (8th Cir. 1990)). "Probable cause exists if, given the totality of the circumstances, the officer 'had reasonably trustworthy information . . . sufficient to warrant a prudent person in believing that the petitioner had committed or was committing an offense.'" United States v. Brown, No. 2:12-cr-00418-DCN-1, 2012 WL 3680436, at *3 (D.S.C. Aug. 27, 2012) (alterations omitted) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Reasonable suspicion is a standard "less demanding . . . than probable cause," and requires only "'specific and articulable facts which, taken together with rational inferences from those facts,' evince 'more than an "inchoate and unparticularized suspicion or hunch" of criminal activity.'" United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008) (citations omitted).

Herbin argues that Corporal Strader lacked probable cause to stop the car in which he was a passenger. Specifically, he argues that Corporal Strader's rationales for initiating the traffic stop -- that he paced the vehicle going 27 miles per hour in a 20 mile per hour speed zone, and that he smelled the odor of marijuana emanating from the car prior to initiating the stop -- are not credible. (Doc. 26 at 6.) Because Corporal Strader could not have reliably observed a traffic violation or a criminal offense, Herbin contends, probable cause was lacking.

The Government supports the stop on two grounds. First, it contends that Corporal Strader reliably observed a traffic violation and detected the odor of marijuana coming from the Chevrolet, thus establishing probable cause on two independent bases. (Doc. 29 at 5-6.) Second, and in the alternative, the Government, relying on California v. Hodari D., 499 U.S. 621 (1991) (holding that cocaine that fell from the defendant's possession during flight was abandoned property and the defendant was not seized until he was physically restrained by law enforcement), argues that when Herbin fled the Chevrolet during the traffic stop, he was no longer seized under the Fourth Amendment and thus the handgun that he dropped as he fled was abandoned property properly recovered by law enforcement. (Id. at 7-8.) Herbin's flight and the recovery of the firearm, according to the Government, formed the basis for lawful searches of his person once he was arrested.

(Id. at 8-9.) The Government contends, therefore, that any deficiencies with Corporal Strader's traffic stop have no bearing on the admissibility of the evidence seized from Herbin. Herbin responds that his flight does not cure the taint from an illegal stop, relying on United States v. Brody, 742 F.3d 1058 (D.C. Cir. 2014) (finding that law enforcement officers' illegal detention of the defendant tainted subsequent discovery of three handguns he discarded during flight when an officer threatened to tase him). However, Herbin does not contest that if the stop was reasonable, the evidence was lawfully seized.

The court finds that the Government has demonstrated by a preponderance of the evidence that Corporal Strader, whose testimony the court found credible, had probable cause to conclude that the driver of the Chevrolet had violated North Carolina's traffic law, N.C. Gen. Stat. §§ 20-141(a) and (e),[2] and that the occupants of the Chevrolet had violated or were violating North Carolina's controlled substance law, N.C. Gen. Stat. § 90-95(a)(3).[3]

---

[2] Section 20-141(a) states: "No person shall drive a vehicle on a highway or in a public vehicular area at a speed greater than is reasonable and prudent under the conditions then existing." Section 20-141(e) states: "Local authorities, in their respective jurisdictions, may authorize by ordinance higher speeds or lower speeds than those set out in subsection (b) upon all streets which are not part of the State highway system."

[3] The statute provides that it shall be "unlawful for any person . . . [t]o possess a controlled substance." Under North Carolina law, marijuana is a Schedule VI controlled substance. N.C. Gen. Stat. § 90-

Corporal Strader testified that, over the course of a city block, he was able to pace the Chevrolet travelling 27 miles an hour in a 20 mile per hour zone. He did so using the process he was taught as a law enforcement officer: pacing the car at a fixed distance to obtain what he believed was a reasonably accurate assessment. He testified that he observed the Chevrolet exceed the speed limit by 7 miles an hour for half of a city block. He did so using the speedometer on his patrol vehicle, which he understood to have been calibrated when it was purchased and properly operating.[4]

By observing the Chevrolet, at a fixed distance, exceed the speed limit using his vehicle's speedometer, for half of a city block, Corporal Strader has provided specific, articulable and trustworthy information to lead a prudent law enforcement officer to believe that the Chevrolet driver was committing a traffic offense. See Hassan El, 5 F.3d at 730 (quoting United States v. Cummins, 920 F.2d 498, 500 (8th Cir. 1990)).

Herbin contends that Corporal Strader's determination of probable cause is unreliable. Herbin notes that the officer never formed an opinion of the Chevrolet's speed independent of the

---

94.

[4] Corporal Strader testified that he understood that speedometers of GPD patrol vehicles no longer required annual calibration because the newer speedometers are based on an electronic system and are no longer based on a cable system.

pacing, and he faults the pacing method because, as Corporal Strader acknowledged on cross-examination, it is recommended that a vehicle be paced for a quarter of a mile. Herbin relies on United States v. Sowards, 690 F.3d 583 (4th Cir. 2012), where the Fourth Circuit reversed the denial of a motion to suppress because the officer's visual estimate that a vehicle was travelling 77 miles per hour in a 70 mile per hour zone was unreliable because it was not supported by independent, corroborating evidence, such as a speed gun or pacing.

But Sowards is not on point. While Sowards involved an alleged excessive speed of seven miles per hour, what rendered it unreliable was that the officer's opinion was based on his visual estimate (even though his patrol car was equipped with radar, as to which he was certified) and was unsupported by any reliable evidence, such as pacing or radar.[5] Moreover, the officer testified that to be certified for radar use, his visual speed

---

[5] After performing mathematical calculations for distance and speed at 75 miles per hour, the court specifically noted:

> To accept the conclusion that Deputy Elliott can visually discern that a vehicle is traveling at 75 mph in a 70-mph zone is to accept the conclusion that he can visually discern a differential in time of less than one-fifth of one second for a vehicle traveling 75 mph versus 70 mph over a distance that he could only approximate to be about 100 yards. Of course, this is also assuming —- which the evidence does not support —- that the distance traveled by Sowards's vehicle was indeed 100 yards, and, moreover, this is without consideration of Deputy Elliott's notable and material difficulties with measurements in yards.

Sowards, 690 F.3d at 593 n.11.

9

estimate could be off by as much as 12 miles per hour as to any vehicle, thus rendering a mere visual estimate suspect under the circumstances. Sowards, 690 F.3d at 585. Here, by contrast, the officer's determination is based on a method specifically approved in Sowards -- pacing, and not on a visual estimate. Cf. id. (noting the officer "did not attempt to pace Sowards's vehicle with his patrol car to gauge the speed"). The fact that Corporal Strader did not pace the vehicle for a quarter of a mile is not fatal. As the corporal noted, that is only a recommendation, not a requirement of the standard. Here, the Chevrolet was travelling in a very slow speed zone -- 20 miles per hour. For the reasons noted in Sowards, this logically made conditions amenable to pacing in a shorter distance. Herbin has not demonstrated that given this slow speed limit, pacing for half a city block would be unreliable.

Corporal Strader also testified that he was able to smell burned marijuana on two occasions: after the Chevrolet passed him as he was parked; and when he pulled his vehicle into the space that the Chevrolet had occupied at the stoplight in front of him. Further, Corporal Strader testified that no other vehicles or pedestrians were nearby at the time. Thus, when he smelled the odor of burned marijuana, he made the logical conclusion that it emanated from the Chevrolet. United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004) (noting that "the odor of marijuana alone

10

can provide probable cause to believe that marijuana is present in a particular place" and "when marijuana is believed to be present in an automobile based on the odor emanating therefrom, we have found probable cause to search the automobile"). Although Herbin argued in his suppression motion that Corporal Strader could not have smelled marijuana because it was January and the windows of both vehicles were likely rolled up, no evidence was presented at the hearing to support this argument. Corporal Strader's testimony that he smelled marijuana in connection with the movements of the Chevrolet was credible.

In sum, Corporal Strader's testimony offered specific, articulable facts which, taken together with rational inferences therefrom, supported a reasonable conclusion both that the Chevrolet had been driving in violation of the posted speed limit and that its occupants had or were committing a crime -- namely possession of marijuana. Therefore, Corporal Strader had probable cause to justify the traffic stop. Having found probable cause for the traffic stop, and because Herbin does not challenge the admission of the items seized in that event, the court need not consider the Government's alternative basis for denial of the motion.

### III. CONCLUSION

For the reasons stated, the court finds that Corporal Strader had probable cause to initiate the traffic stop of the vehicle in

which Herbin was a passenger, and therefore the stop was lawful.

IT IS THEREFORE ORDERED that the Defendant's motion to suppress (Doc. 26) is DENIED.

/s/   Thomas D. Schroeder<br>United States District Judge

December 10, 2019